UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Holly Block,<br><br>              Plaintiff,<br>-against-<br><br>City of New York, City University of New York, College of Staten Island, Alexander Scott and Emmanuel Esperance, Jr., individually,<br><br>              Defendants. | **COMPLAINT**<br>**JURY TRIAL DEMAND**<br>Case No. |

    Plaintiff, Holly Block, by and through her undersigned attorney, Joseph W. Carbonaro of Carbonaro Law, PC, as against the City of New York, City University of New York ("CUNY"), College of Staten Island ("CSI"), Alexander Scott ("Scott") and Emmanuel Esperance, Jr. ("Esperance"), individually, (collectively "Defendants"), alleges as follows:

### PRELIMINARY STATEMENT

    1.    Plaintiff brings this action alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), the New York State Human Rights Law codified in Executive Law Section 296 ("NYSHRL") and the New York City Administrative Code Article 8 ("NYCAC") arising from Defendants' willful and unlawful employment policies, patterns and/or practices of discriminatory conduct based upon gender.

    2.    At all times relevant to this Complaint, Plaintiff worked in Staten Island, New York for the City University of New York, specifically the College of Staten Island ("CSI").

    3.    Defendants willfully and intentionally committed FLSA and NYLL violations by engaging in a pattern and practice of failing to pay overtime compensation for all hours worked over forty (40) each week.

    4.    Further, Defendants failed to pay Plaintiff spread of hours pay as required under the NYLL.

1

5. Defendants willfully and intentionally misclassified Plaintiff on at least two occasions as an FLSA/NYLL exempt employee. Concomitant with the classifications as exempt, were modifications to Plaintiff's job title, duties and responsibilities that effectively downgraded the Plaintiff and rendered her non-exempt under federal and New York State law.

6. Defendants' improper classification resulted in the failure to properly compensate Plaintiff with overtime pay and spread of hours pay as required under applicable state and federal law.

7. Plaintiff alleges pursuant to each of the aforesaid laws that Defendants retaliated against her after Plaintiff engaged in protected activity, specifically, lodging complaints in the context of formal grievances through her union and pursuant to the applicable collective bargaining agreement ("CBA"), in addition to informal complaints made directly to management concerning the failure to pay overtime wages and spread of hours.

8. Plaintiff alleges pursuant to the FLSA, NYLL § 650 *et seq.* and 12 New York Codes, Rules and Regulations § 146 *et seq.* ("NYCRR") that she is entitled to recover compensatory damages from the Defendants: (1) unpaid overtime compensation; (2) unpaid "spread of hours" premium for each day she worked ten (10) or more hours; (3) liquidated damages equal to the sum of unpaid wages, and/or double the sum of unpaid wages upon a finding of willfulness, unpaid "spread of hours" premium, unpaid overtime.

9. Plaintiff alleges that pursuant to New York's Wage Theft Protection Act, Section 195.1 of the New York State Labor Law ("WTPA"), Defendants failed to provide Plaintiff with a notification of her hourly rate, overtime rate, day of pay as required by the WTPA and is entitled to statutory damages as prescribed by the WTPA.

10. Plaintiff further alleges that she is entitled to recover compensatory damages, punitive damages and liquidated damages at double the amount of unpaid compensation and reasonable attorneys' fees and costs. As a result of Defendants' violations of law, Plaintiff was deprived, *inter alia*, of her regular compensation, overtime compensation, spread of hours compensation, and sustained other damages resulting from Defendants' failure to properly classify her as not exempt from the NYLL.

11. Plaintiff alleges pursuant to the NYSHRL and NYCAC that she was discriminated against in the terms and conditions of her employment based upon her gender (female), including acts which adversely affected the terms and conditions of her employment by downgrading her

title, diminishing her authority and removing her discretion in performing her job functions, all in favor of a male employee with less experience and who is less qualified than Plaintiff.

12. Plaintiff alleges pursuant to each of the aforesaid laws that Defendants retaliated against her after Plaintiff engaged in protected activity, specifically, lodging complaints in the context of formal grievances through her union and pursuant to the applicable collective bargaining agreement ("CBA"), in addition to informal complaints made directly to management concerning gender-based discrimination.

13. On or about December 4, 2022, Plaintiff presented a Notice of Claim to the Defendants by service upon the New York City Corporation Counsel.

14. On or about January 30, 2023, a hearing was held pursuant to Municipal Law Section 50-H wherein Defendants elicited Plaintiff's sworn testimony.

## PARTIES

**PLAINTIFF:**

15. Plaintiff is and was at all times relevant hereto an individual residing in the County of Richmond, in the City and State of New York.

16. Plaintiff is and was all times relevant hereto employed by CUNY and performs her work at CSI.

17. At all relevant times, Plaintiff was a covered employee within the meaning of the NYLL.

18. Between June 2021 and the present, without Plaintiff's knowledge, Defendants knowingly and unlawfully changed Plaintiff's classification from non-exempt to exempt, despite knowing that the work she in fact performed was not of a kind that falls under any exemption to the NYLL. Defendants failed to compensate her in accordance with the NYLL as a non-exempt worker.

19. From March 2021 to the present, Plaintiff was knowingly and unlawfully compensated as a managerial employee, paid a flat salary regardless of hours worked, not paid for overtime or spread of hours, nor was she paid on a weekly basis, all of which are required by the New York State Labor Law.

20. During the aforesaid time period, Plaintiff worked in excess of 40 hours per week, in excess of 10 hours per day and received a bi-monthly paycheck, all in violation of the New York State Labor Law.

21. The compensation Defendants paid to Plaintiff as a salaried employee fell far short of the amount to which Plaintiff is entitled as a non-exempt employee based on the number of hours she worked each week (in excess of 40) and each day (in excess of 10).

**DEFENDANTS:**

22. CSI is a part of the CUNY system, which is comprised of 11 senior colleges, seven community colleges, a graduate school, a law school, and a medical school. According to CUNY's website, "it is the largest municipal college system and the third largest university in the nation and is a part of CUNY's network of colleges."

23. CSI is a four-year institution that awards bachelor's, master's, doctoral, and post-doctoral degrees.

24. At all times relevant to this action, CSI operated in Richmond County, in the City and State of New York.

25. Upon information and belief, CSI has an annual gross volume of sales through tuition in excess of $500,000.00.

26. CSI recruits students to attend college and matriculate through its various programs. It relies on recruitment officers, such as Plaintiff, to develop and maintain relationships with "feeder" institutions such as high schools and their related personnel who are instrumental in guiding students to potential application and enrollment opportunities.

27. Alexander Scott ("Scott") is a CSI Assistant Vice President and Dean, and Plaintiff's supervisor.

28. Emmanuel Esperance, Jr. ("Esperance") is the Director of Recruitment and Admissions at CSI and Plaintiff's supervisor.

29. Scott and Esperance are Plaintiff's co-employers with CUNY and CSI for purposes of the FLSA and NYLL.

30. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff her overtime compensation at 1.5 times her regular rate of pay for all hours worked past 40 per week and spread of hours premium for each day worked in excess of 10 hours.

31. At all times relevant, Scott and Esperance aided and abetted CUNY and CSI's knowing and willful failure to pay Plaintiff her overtime compensation and spread of hours premium.

## JURISDICTION AND VENUE

32. This Court has original federal question jurisdiction under 28 U.S.C. § 1331, as this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as they are related in this action within such original that they form part of the same case or controversy under Article III of the United States Constitution.

33. Venue is proper in this District, because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein allegedly took place in this District. Venue is proper because Plaintiff is a resident of Richmond County, which is within this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

34. Plaintiff was hired in January 2009 as the Assistant Director of Admissions for Recruitment (Higher Education Assistant) in accordance with CUNY's Career Opportunity recruitment notice.

35. The recruitment document listed the position as exempt from federal FLSA and NYLL protections.

36. The listed salary range was between $38,801 - $67,092.

37. Upon information and belief, no one else in Plaintiff's office, including her supervisors, were hired as FLSA and NYLL exempt.

38. The Career Opportunity recruitment notice listed POSITION DESCRIPTION AND DUTIES, stating that the position reports to the Director of Recruitment and Admissions, the Assistant Director for Recruitment and has the following responsibilities:

- Develops and implements comprehensive recruitment plans that target the following student populations: General Freshman, Selective Programs, Nontraditional, International, SEEK, and Transfer.
- Oversees recruitment to selective programs, including: FIRST, The Verrazzano School, Teacher Academy, and Macaulay Honors College.
- Develops and implements comprehensive tour program.
- Organizes and conducts open houses and receptions for admitted students, including phone call initiatives and production of promotional materials and their implementation.
- Manages extensive inquiry and communications system.
- Develops and implements schedule of off-campus visits to high schools and community agencies with an emphasis on underrepresented groups.
- Serves as recruitment liaison with the SEEK Office, Career and Scholarship Center in disseminating scholarship information to prospective students, and the Office of Wellness for Student Ambassadors.
- Serves as liaison with academic departments to implement specific program-based recruitment activities.
- Collaborates with the Assistant Director for Processing to determine effective methods for utilizing technology in staff-student interactions and coordination of walk-in admissions campaigns.
- Works closely with Office of Publications in the development of recruitment materials.
- Creates/updates brochures for recruitment and utilizes computer programs including Microsoft Word, Quark, and Illustrator, as necessary, to develop recruitment materials needed for immediate implementation.
- Assists in the writing, and placement determination, for advertisements in newspapers and magazines.
- Researches, purchases, and utilizes relevant student search files and web-based recruitment programs.

- Creates and updates Web site pages to recruit students.
- Supervises two full-time recruiters, two part-time recruiters, one part-time recruitment assistant, and Work-Study students as needed.

39. Plaintiff was hired with two full-time Admissions Advisors, two part-time admissions advisor/recruiters, a College Assistant, and a student staff.

40. Despite having support, Plaintiff's position was perpetually understaffed, which forced her to work well in excess of 40 hours each week, typically by between 10–20 additional hours simply to maintain the *status quo* in her unit and cover day to day operations.

41. Plaintiff communicated about her overtime efforts in person and via email communications. For example, in an email to a representative, Jessica Collura, dated April 3, 2020, Plaintiff stated in pertinent part:

> I am a trained creative professional and expert in my field, and my work often involves consecutive hours beyond a 7-hr. day in order to successfully promote the College….
>
> I have performed my job in the same exemplary manner ever since I was hired—as per the nature of my job description and execution of work product, I routinely work after hours for an average of 10–20 hours per week of overtime. This is necessary in order to meet creative and promotional deadlines, attend recruitment events both on- and off -campus, and to promote the College in its best image possible to our clientele, stakeholders and community….

42. In or about 2013, a full seven years prior to the above email correspondence, when the web-based management tool "*CUNYfirst*" went "live," Plaintiff's position, unbeknownst to her, was recorded as "Admissions Specialist" and <u>non-exempt</u>.

43. Despite the recorded change, Plaintiff's job duties remained the same for a period of time.

44. In March 2021, as an Admissions Specialist, Plaintiff was routinely working between 10–20 hours of overtime per week. However, the Human Resources Department told her

7

she would be terminated if she demanded overtime pay because her supervisors would not approve compensation for hours worked greater than 40.

45. Plaintiff was thereby denied rightfully earned overtime compensation in contravention of the NYLL.

45. On or about June 1, 2021, CSI changed Plaintiff's title from Admissions Specialist to Academic Program Specialist, a less prestigious title entailing duties and responsibilities that are non-managerial, non-professional, non-creative, and completely misaligned with the plaintiff's education, training, experience and demonstrated skill. In fact, they are clerical duties.

46. An Academic Program Specialist is a non-managerial position outside the Admissions family.

47. Beginning on or about July 12, 2021 and continuing to date, Plaintiff's oversight, design, planning and execution of campus tours was eliminated and assigned to a less experienced, less capable male employee with less seniority in the activities previously performed by Plaintiff.

48. In or around August 2021 and continuing to date, Plaintiff's access to the CSI's Admissions Inquiry Mailbox was rescinded by her supervisors and granted to a younger, male employee who had less and/or no experience in recruiting students to attend CSI.

49. Plaintiff's access to former Admissions Advisors and/or recruiters' high school portfolio (containing the names and contact information of prospective CSI students) was removed and eliminated without cause or justification, and granted to a less experienced, less competent male employee with less seniority in the recruitment of students than the Plaintiff.

50. Defendants Esperance reassigned event planning and the top feeder school recruitment portfolio from Plaintiff's assignment and reassigned these tasks to a younger, less experienced male employee.

51. Specifically, in August 2021 and continuing to date, access to the portfolio, which contained specific information concerning high school seniors and CSI students, and which had been created, managed and used by Plaintiff for the preceding 13 years, was granted to a less experienced, less competent younger male employee. The aforesaid actions forced Plaintiff to perform non-managerial, ministerial work that had previously been performed by less senior employees who had less experience and competence than Plaintiff.

52. Access to Plaintiff's campus tour registration form was also rescinded and granted to a less experienced, younger, male employee who, again, had little understanding of the Assistant Director job requirements and no expertise in the work Plaintiff had previously performed.

53. In addition, following Plaintiff's complaints of gender-based discrimination beginning in 2017 and continuing to date, Plaintiff's creative responsibilities requiring the use of skill have been, and continue to be, reassigned, including but not limited to removing Plaintiff's access to software that allows CSI to deploy mass communications to prospective candidates.

54. Defendants further eliminated Plaintiff's authority to create marketing material.

55. The aforesaid acts, among others, were undertaken in retaliation for Plaintiff's complaints of discrimination, which constitute protected activity.

56. All the aforementioned adversely affected the terms and conditions of Plaintiff's employment in violation of the NYSHRL§296, the NYCHRL § 8-107(1)(a)(3), the FLSA and the NYLL.

57. Plaintiff's administrative access to use the CUNY "Sharepoint Recruitment Calendar," an essential recruitment tool, the use of which was implemented CUNY-wide because of the Plaintiff's efforts, was revoked in 2022 by the Director of Recruitment and Admissions and awarded to Directors only by the University Executive Director of Admissions Services.

58. In 2018, Defendants began foisting additional non-managerial tasks onto Plaintiff's workload, including washing tablecloths, something no male staff member was asked to do.

59. In 2018, Plaintiff's full time support person was removed, leaving her with only one part-time support person.

60. From 2018 to the present, Plaintiff's functions were and are those of a non-exempt employee.

61. Plaintiff was, at the times set forth in the preceding paragraphs, entitled to the benefits of the New York Labor Law in regard to her wages and hours, including overtime pay, minimum wage pay, spread of hours and all other benefits secured by the NYLL.

62. In spite of this change in the nature of Plaintiff's duties and responsibilities, which resulted in a *de facto* reclassification as non-exempt, Defendants willfully continued to compensate Plaintiff as if she was still exempt from the FLSA and NYLL in that Defendant CSI paid Plaintiff an annual salary without compensation for overtime, spread of hours and without paying her the

hourly wage to which she was entitled, nor did CSI provide Plaintiff with the wage and hour documentation required under the New York State Wage Theft Protection Act.

63. Even after advising Plaintiff that she had been formally reclassified as exempt, Plaintiff continued to function in a non-managerial capacity, performing functions such as washing tablecloths and other ministerial tasks more properly aligned with a clerical or secretarial employee, which, as set forth above and herein, make her FLSA and NYLL non-exempt as a matter of law, notwithstanding CSI's reclassification attempts.

64. On at least four occasions between 2014 and 2021, Plaintiff formally requested reclassification via self-nomination which was denied on each occasion.

65. By doing so, Defendants acted willfully and with a complete disregard for their obligations under the FLSA and NYLL.

66. No other male employees were willfully and knowingly classified as exempt when they were in fact performing work functions which rendered them non-exempt from the FLSA and NYLL.

67. The aforesaid willful, deliberate and malicious failure to follow the FLSA and NYLL with respect to Plaintiff is evidence of Defendants' discriminatory animus based upon Plaintiff's gender.

## FIRST CAUSE OF ACTION

### New York Labor Law Overtime Violations

68. Plaintiff fully restates, realleges and incorporates by reference each and every allegation of the Complaint above and herein as if fully set forth.

69. The overtime wage provisions of the New York Labor Law and its supporting regulations apply to Defendants and protect Plaintiff.

70. Defendants have willfully failed to pay Plaintiff overtime wages for hours worked in excess of forty (40) hours in a workweek.

71. Defendants' knowing or intentional failure to pay Plaintiff overtime wages for all hours worked over 40 per week is a willful violation of the New York Labor Law Article 19 § 650, et seq. and its supporting regulations.

72. Under the NYLL, certain workers are considered exempt based upon their job duties and responsibilities, including managerial, professional, administrative and creative ("Exemptions" or "Exempt employees").

73. The aforesaid Exemptions from the NYLL are based upon a given employee's job functions as actually performed on a daily basis, not on how the employer classifies the employee.

74. When an employee is exempt from the NYLL, overtime, minimum wage and spread of hours provisions are inapplicable if the employee also makes above a certain minimum salary.

75. If an employee performs largely clerical functions that require little or no discretion, special skill, professional judgment and/or creativity on the part of that employee, the employee is <u>not</u> exempt from the NYLL.

76. The Plaintiff herein was, at all times relevant to this action, compensated as an exempt, managerial employee.

77. As set forth herein and above, Plaintiff's duties and responsibilities from 2018 to the present were clerical and/or secretarial in nature, requiring little to no discretion, special skill, professional judgment and/or creativity.

78. Despite how Defendants misclassified Plaintiff with respect to the NYLL provisions and protections, Plaintiff was from 2010 to present, a non-exempt employee.

79. Plaintiff was not paid overtime for work she performed above and beyond 40 hours in one work week.

80. From Plaintiff's hiring in January 2009 to the present, Plaintiff has worked in excess of forty hours each week she has been employed by Defendants.

81. From Plaintiff's hiring in January 2009 to the present, Plaintiff has worked not less than 2,500 hours in total time that is considered overtime under the NYLL, specifically time above 40 hours in any one week.

82. From Plaintiff's hiring in January 2009 to the present, Plaintiff has worked not less than two days per week during which she worked more than 10 hours in one day.

83. Accordingly, Defendants have breached their duty under the NYLL.

84. Defendants' actions in failing to abide by the NYLL with respect to Plaintiff was willful.

85. Plaintiff seeks damages at double the rate of her overtime pay for all hours worked greater than 40 in one work week.

86. Plaintiff seeks damages at double the regular hourly rate for one hour for all days worked in excess of 10 hours from Plaintiff's hiring in January 2009 to the present.

87. As a result of Defendants' unlawful acts, Plaintiff has been deprived of overtime compensation and other wages in an amount to be determined at trial, and is entitled to the recovery of such amount, liquidated damages, attorneys' fees, pre-judgment and post-judgment interest, costs and other compensation pursuant to the New York Labor Laws.

## SECOND CAUSE OF ACTION
### New York Labor Law Record Keeping Violation

88. Plaintiff realleges and incorporates by reference all of the allegations above.
89. NYLL Section 195(1)(a) provides that "every employer shall provide his or her employees, in writing … at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other…"
90. Defendants did not provide to Plaintiff the aforesaid written information required by NYLL Section 195(1)(a).
91. NYLL Section 195(2) provides that employers shall "notify his or her employees in writing of any changes to the information set forth in subdivision one of this section, at least seven calendar days prior to the time of such changes, unless such changes are reflected on the wage statement furnished in accordance with subdivision three of this section…"
92. Defendants failed to provide to Plaintiff the information required under NYLL Section 195(2) at any time during her employment.
93. Defendants failed to make, keep and preserve accurate records with respect to Plaintiff, including hours worked each workday, and total hours worked each week, as required by the NYLL and its supporting regulations.
94. Defendants failed to provide Plaintiff paystubs with her correct hourly rate and hours worked as required by NYLL § 195.
95. Defendants' failure to make, keep and preserve accurate records was willful.

96. As a result of Defendants' willful and unlawful conduct, Plaintiff is entitled to an award of damages, in an amount to be determined at trial, costs and attorneys' fees, as provided by NYLL § 198.

## THIRD CAUSE OF ACTION

### New York Spread of Hours Provisions-NY Comp. Code R & Regs. Tit. 12 § 146-1.6

97. Plaintiff realleges and incorporates by reference all allegations set forth above.
98. Plaintiff was not paid one extra hour at her regular hourly rate for each day she worked over 10 hours.
99. On one or more occasions from Plaintiff's hiring in January 2009, to the present, Plaintiff has worked in excess of 10 hours in one day.
100. Plaintiff was not paid one additional hour at her regular time rate for time she worked in one day in excess of 10 hours.
101. Plaintiff regularly had workdays that lasted more than ten (10) hours.
102. Defendants willfully and intentionally failed to compensate Plaintiff one hour's pay at the basic New York State minimum hourly wage rate when his workdays exceeded ten (10) hours, as required by New York law.
103. As a result of Defendants' willful and unlawful conduct, Plaintiff is entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre and post judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

## FOURTH CAUSE OF ACTION

### Fair Labor Standards Act- Overtime Violations

104. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.
105. The overtime provisions set forth in the FLSA, 29 USC §§ 201 et seq., and the supporting federal regulations apply to Defendants and protects Plaintiff.

106. Defendants have willfully failed to pay Plaintiff the overtime wages for hours worked in excess of forty (40) hours in a workweek.

107. As a result of Defendants' unlawful acts, Plaintiff has been deprived of overtime compensation and other wages in an amount to be determined at trial, and is entitled to the recovery of such amount, liquidated damages, attorneys' fees, costs and other compensation pursuant to the FLSA.

FIFTH CAUSE OF ACTION
New York State Executive Law Section 296

108. Plaintiff realleges and incorporates by reference all allegations set forth above.

109. New York State Executive Law Section 296, the New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms and conditions of employment based upon, *inter alia*, gender.

110. Plaintiff is a member of a protected class under the NYSHRL, specifically, Plaintiff is female.

111. Plaintiff is qualified for both the positions of Admissions Specialist and Academic Program Specialist.

112. Plaintiff suffered one or more adverse employment actions.

113. The circumstances surrounding the aforesaid adverse employment actions give rise to an inference of discrimination.

114. The NYSHRL further prohibits retaliation for complaints of discrimination on any basis.

115. On frequent occasions during the course of her employment, Defendant Esperance has treated Plaintiff less favorably than male employees.

116. The NYSHRL prohibits discrimination based on, *inter alia*, gender when a person is subjected to inferior terms, conditions or privileges of employment because of their protected characteristic, including but not limited to gender.

117. Over her years of service for Defendants, Plaintiff's performance has been exemplary, including working hundreds of hours of uncompensated overtime on projects, developing new technologies and methodologies on her own time.

118. Such exemplary work has improved CSI's ability to recruit more and better candidates to attend its programs.

119. Work of the quality that Plaintiff produced was superior to that of her male colleagues.

120. Despite producing exemplary work such as set forth above, Defendants repeatedly took away duties and responsibilities involving use of her talents, discretion, judgment, skills, knowledge and creativity, such that she is now relegated to performing the tasks associated with clerical and/or secretarial staff.

121. The duties and responsibilities taken away from Plaintiff were transferred to a less qualified, less experienced male.

122. In August, 2014, Plaintiff observed Defendant Esperance in a room with a female employee engaged in sexual activity, including, but not limited to fondling and touching each other's bodies.

123. Seconds after the occurrence, Defendant Esperance entered Plaintiff's office and blocked the door so Plaintiff could not leave while the female employee exited the building.

124. On or about September 4, 2019, while seated next to each other during a meeting, Defendant Scott, without Plaintiff's consent, stroked Plaintiff's leg above the knee in a manner that was sexual in nature, and which was both objectively and subjectively demeaning and offensive.

125. Plaintiff immediately recoiled from Defendant Scott's overture, which caused her shock and embarrassment.

126. Thereafter, Esperance and Scott retaliated against Plaintiff for complaining about the above acts of discrimination including, but not limited to, refusing to pay overtime, spread of hours and in other ways treating her worse than other employees who did not raise such complaints.

127. Thereafter, Plaintiff complained about Esperance's actions following Plaintiff's observations of Esperance and the female employee.

128. Thereafter, Plaintiff complained about Scott having stroked Plaintiff's leg in a sexual manner as set forth above.

129. Plaintiff engaged in protected activity by so complaining.

130. The aforesaid treatment evidences circumstances which give rise to an inference of discriminatory intent on the part of Defendants.
131. Defendants have violated the NYSHRL and the NYCAC.
132. Plaintiff demands compensatory and punitive damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### New York City Administrative Code Article 8

133. Plaintiff re-alleges and incorporates by reference all allegations set forth above.
134. The New York City Administrative Code Article 8-107(1)(a) provides that "[i]t shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the … gender…of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."
135. Defendants further engaged in the above-stated acts of retaliation for engaging in protected activity.
136. Defendants have violated the aforesaid provision of the New York City Administrative Code.

WHEREFORE, Plaintiff demands damages against the Defendants under the FLSA, NYLL, NYSHRL and NYCAC in an amount to be determined at trial including compensatory and punitive damages, costs, expenses, prejudgment interest and reasonable attorneys' fees.

Dated: New York, New York
October 13, 2023

        CARBONARO LAW, PC
        Attorneys for the Plaintiff
        757 Third Avenue, 20th Floor
        New York, New York 10017
        Tel.: (212) 888-5200
        Fax: (212) 898-0394
        Email: joe@jcarbonarolaw.com

By:   /s/Joseph W. Carbonaro
      Joseph W. Carbonaro


THE BEHRINS LAW FIRM
Attorneys for the Plaintiff
1491 Richmond Road
Staten Island, New York 10304
Tel.: (718) 447-5540
jb@behrinslaw.com

By: _____
    Jonathan B. Behrins (JB 9852)